# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH GRIMES,** | : | |
|    Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| *v.* | : | **NO. 23-CV-4582-KSM** |
| | : | |
| **THE DETENTION CENTER,** *et al.* | : | |
|    Defendants. | : | |

## MEMORANDUM

**MARSTON, J.**                                                                                                     **January 19, 2024**

      *Pro se* Plaintiff Kenneth Grimes filed this action alleging violations of his civil rights based on events that occurred while he was housed at the Philadelphia Detention Center in May 2023. Named as Defendants are the Detention Center, the Philadelphia Police Department, and Blanche Carney, the Commissioner of the Philadelphia Department of Prisons, who is sued in her official capacity. (*See* Doc. No. 1 at 2–3.[1]) In this Memorandum, the Court considers Grimes's motion for leave to proceed *in forma pauperis* (Doc. No. 2) and two miscellaneous motions, one which seeks to hold a nonparty in contempt (Doc. No. 5), and one which requests a new judge to oversee this action (Doc. No. 6). For the following reasons, Grimes's motion to proceed *in forma pauperis* is granted, the Detention Center and the Police Department are dismissed with prejudice, and the remainder of Grimes's claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Grimes is granted leave to file an amended complaint as set forth more fully below. Grimes's miscellaneous motions are denied.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

I.     **FACTUAL ALLEGATIONS**[2]

Utilizing a form Complaint along with a typewritten supplement, Grimes alleges that he was assaulted while he was housed in the psychiatric ward at the Detention Center. (*See* Doc. No. 1 at 5, 6.)[3] Grimes avers that on May 7, 2023, at least four correctional officers and a male nurse entered his cell and asked him to sit down. (*Id.* at 5, 12.) Grimes moved to the furthest corner in his cell and asked them not to violate his personal space. (*Id.*) He contends that "two officers pummeled [him] as [he] coward [sic] in fear in the corner, then [one of the officers, identified as "Harris,"] pulled [Grimes's] right foot forward as another correctional officer pent [sic] [Grimes's] left leg behind [him], and obviously cut [him] with something sharp," resulting in a wound to the top of his left foot. (*Id.*) Grimes further avers that "they" pinned him to a bed, and he felt a needle prick his buttocks. (*Id.*) He alleges that "they" walked out of the cell leaving him "with a gaping wound that was bleeding pretty bad." (*Id.*) Grimes asserts that he spent 19 days in the Detention Center, during which he was denied access to soap, a toothbrush, and a washcloth. (*Id.* at 12.) He asserts that it was very cold, and he didn't get the hour of recreational time that he is "entitiled [sic] to by law." (*Id.* at 12–13.)

---

[2] The allegations set forth in this Memorandum are taken from Grimes's Complaint. Since filing the Complaint, Grimes has filed several exhibits. (*See* Doc. Nos. 7–16.) The Court has reviewed the exhibits but will not speculate about any claims Grimes may seek to raise based on them, because a plaintiff may not state a claim by relying solely on exhibits. *See Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint. Judges are not like pigs, hunting for truffles buried in the record.") (citations and quotations omitted); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its pleading requirements under Rule 8(a) by attaching numerous exhibits to its Complaint.").

[3] Grimes alleges that he was a prisoner at the Riverside Correctional Facility and was taken to the Detention Center for a 302 commitment. (Doc. No. 1 at 4.)

Grimes was released on August 3, 2023.  (*Id.* at 5, 12.)  Grimes claims that since his release, he has spoken with several individuals in city hall about the May 7, 2023 incident.  (*Id.* at 12.)  He avers that he contacted the board of ethics, the clerk of courts, the records department, and a "court monitor for the eastern district," and that he gave "ryan grosso permission to tell the department of prisons to start an investigation."  (*Id.* at 12.)  In particular, Grimes asserts that he "spoke with a police officer badge number 6816 about pressing charges on corrections officer harris," but the police officer informed Grimes that he could not "lock [Harris] up."  (*Id.* at 1, 3, 12, 15.)  Grimes seeks $50 million in monetary damages.  (*Id.* at 5.)

## II.    MOTION TO PROCEED *IN FORMA PAUPERIS*

The Court grants Grimes leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.

### A.    Legal Standard

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, [the Court will] accept the facts alleged in the complaint as true, draw[ ] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a

plausible [ ] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotations omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Grimes is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  And the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  That said, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### B. Discussion

Grimes's Complaint brings claims for violations of his Eighth and Fourteenth Amendment rights against the Detention Center, the Police Department, and Commissioner Carney.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Court begins by addressing whether each Defendant is appropriately named in this § 1983 action, before turning to the substance of Grimes's claims.

#### 1. Appropriate Defendants

Although Grimes identifies multiple individuals in the text of his Complaint, he has named only the Detention Center, the Police Department, and Commissioner Carney as Defendants in this action.

### a. The Detention Center

Grimes's claims against the Detention Center are not plausible because a prison or jail is not a "person" subject to suit under § 1983. *Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021) (citing *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010)); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014)). Accordingly, the Court dismisses Grimes's claims against the Detention Center with prejudice.

### b. The Police Department

Grimes has also named the Police Department as a Defendant. (Doc. No. 1 at 3.) Since the Supreme Court's decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts have consistently found that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See, e.g.*, *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993). This means that while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *See, e.g.*, *Martin v. Red Lion Police Dep't*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Thompson v. New Jersey*, No. 05-4420, 2005 WL 2406100, at *3 (D.N.J. Sept. 28, 2005) (holding that a New Jersey police department is not a "person" subject to suit under 42 U.S.C. § 1983). Accordingly, the Police Department is not a proper defendant in this case under § 1983 and is also dismissed with prejudice.

     *c.*  *Commissioner Carney*

  That leaves Commissioner Carney, who has been named in her official capacity only. (*See* Doc. No. 1 at 2.) "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [employing] entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). That means Grimes's claims against Commissioner Carney in her official capacity are, in essence, claims against the City of Philadelphia. *Id.* ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690, n.55).

  To plead a claim for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at

6

658; *see also Baker v. Monroe Township*, 50 F.3d 1186, 1191 (3d Cir. 1995) (explaining that to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

As an alternative to the policy or custom requirement, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (explaining that the plaintiff can establish deliberate indifference by identifying a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary, or by showing that the need for more or different training was so obvious).

Here, Grimes has not alleged that a municipal policy or custom caused a violation of his constitutional rights. *See Monell*, 436 U.S. at 694; *McTernan*, 564 F.3d at 658. Neither has he alleged that his injuries resulted from a failure to train or supervise that amounts to deliberate indifference. *See Forrest*, 930 F.3d at 106. Therefore, he has failed to allege a basis for an official capacity/municipal liability claim against Commissioner Carney, and his § 1983 official capacity claims are dismissed as against her.

To the extent Grimes meant to assert individual liability claims against Commissioner Carney, those claims also fail because Grimes has not articulated how she was personally

7

involved in the alleged constitutional violations. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining that in a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). In other words, Grimes has not alleged what Commissioner Carney did, or did not do, to violate his constitutional rights.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). To set forth a claim under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. N.J. Dep't. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Thus, to the extent that Grimes seeks to proceed on a theory of supervisory liability, he must allege facts showing that Commissioner Carney was deliberately indifferent to a known risk of injury, had actual knowledge of and acquiesced in the alleged violations, or participated in them. *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

9

Grimes has not adequately tied his allegations to Commissioner Carney. Indeed, Grimes presents no specific allegations against Commissioner Carney in the Complaint. *See Ogrod v. City of Philadelphia*, No. 21-2499, 2022 WL 1093128, at *14 (E.D. Pa. Apr. 12, 2022) (finding plaintiff, who only alleged that supervisor-defendant was a lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Instead, Grimes vaguely claims that "they" or the "corrections officers" engaged in certain conduct that violated his rights. But Grimes does not clarify whether Commissioner Carney was among those individuals, and a plaintiff generally cannot state a claim by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged"). Accordingly, to the extent Grimes meant to assert individual capacity claims against Commissioner Carney, those claims also fail.

Because Grimes's § 1983 claims against Commissioner Carney are implausible as pleaded, they are dismissed without prejudice pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii). However, because the Court cannot say that Grimes can never state a plausible § 1983 claim against an appropriate defendant based on the conditions of his confinement at the Detention Center, he will be given leave to file an amended complaint.

### 2. **Substantive Defects**

In addition to the flaws surrounding the allegations as to each named Defendant, there are multiple defects in the substance of Grimes's claims as pleaded. If Grimes chooses to file an amended complaint, he should correct these deficiencies.

#### a. *Excessive Use of Force*

First, to the extent that Grimes seeks to assert constitutional claims based on the alleged assault, his claims are not plausible as pleaded. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). To determine if this standard is met, the court considers whether an officer used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The inquiry is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

Even construing the allegations in the Complaint liberally, the circumstances of the use of force are unclear. Grimes alleges that Correctional Officer Harris "pulled [his] right foot forward" (*see* Doc. No. 1 at 5, 12), but this allegation does not suggest a level of force that offends contemporary standards of decency. *See Hudson*, 503 U.S. at 8–9. As to Grimes's remaining allegations, including the shot in Grimes's buttocks and the cut to his foot, the Court cannot determine whether they give rise to a constitutional violations as currently pleaded. Notably, Grimes has not alleged any facts tying the challenged actions to a responsible individual or individuals. As noted above, a plaintiff generally cannot state a claim by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal*, 546 F. App'x at 113. Grimes has also provided little context about the need for the application of force, the extent of the threat to prison personnel, and the other factors listed above.

Should Grimes choose to file an amended complaint that states a claim for excessive use of force, he should attempt to clarify these issues.

        *b.*  *Conditions of Confinement*

Second, to the extent Grimes seeks to assert claims based on the conditions of his confinement, his claims are not plausible as pleaded. The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To succeed on a conditions of confinement claim, "the plaintiff must demonstrate both an objective element—that the deprivation was sufficient[ly] serious, and a subjective element—that the prison officials acted with a sufficiently culpable mind." *Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 79 (3d Cir. 2014). In general, a prisoner must assert that prison officials acted with deliberate

indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  See *Wilson*, 501 U.S. at 298–99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837).

Here, Grimes alleges that he did not have access to soap or a toothbrush, was extremely cold, and did not receive his one hour of recreation time during the 19 days that he was at the Detention Center's psychiatric ward.  (Doc. No. 1 at 6, 12–13.)  Beginning with the objective element, "[p]rison conditions may objectively violate the Eighth Amendment proscription against cruel and unusual punishment when inmates are deprived of 'the minimal civilized measure of life's necessities,'" including "provision for basic hygiene."  *Watson*, 567 F. App'x at 79 (quoting *Rhodes*, 452 U.S. at 347).  Nevertheless, the Court questions whether Grimes's alleged deprivation—which lasted only a few days and happened while Grimes was admittedly being held for psychiatric observation—is sufficiently serious to satisfy the objective element.  *See Mayo v. Correctional Officer Finley*, Civil Action No. 16-cv-1514, 2017 WL 2937965, at *3 (W.D. Pa. Mar. 24, 2017) ("To the extent Plaintiff contends that it was [his toothpaste, toothbrush, soap, and washcloth] that he was forced to go without for fourteen days, . . . his allegations still do not state a claim because deprivation of personal hygiene items for a limited number of days does not violate the Eighth Amendment."); *Clark v. Aviles*, Civil No. 11-2156 (SDW), 2011 WL 5080260, at *4 (D.N.J. Oct. 26, 2011) ("In this Complaint, Plaintiff alleges that his unit was on lockdown for over 240 days and, during this time, detainees had no access to outdoor recreation and they were confined for 16 to 22 hours per day.  Plaintiff's allegations do not satisfy the objective component because they are not sufficiently serious in that they do not

13

show that Plaintiff endured genuine privations and hardship over an extended period of time."); *cf. Watson*, 567 F. App'x at 79 (finding at summary judgment that the objective element was not satisfied where the plaintiff claimed that he "brushes his teeth with a worn-down toothbrush, . . . sometimes goes days without toothpaste, . . . is able to shave [only] once a month, and . . . receives two small bars of soap once a week").

And even assuming that Grimes's allegations are sufficiently serious to satisfy the objective element, he has provided no allegations from which the court could find the subjective element satisfied. Grimes has not identified any individual who denied him the requested hygiene products and recreation time, nor has he alleged that he asked for them and was denied. *See Clark v. Camper*, Civil Action No. 22-3054, 2023 WL 2796084, at *6 (E.D. Pa. Apr. 5, 2023) ("We need not decide at this stage whether Mr. Clark's allegations regarding the lack of soap, toothpaste, and toothbrush in solitary confinement for fourteen days meet the pleading standard required to establish the objective component of an Eighth Amendment violation. The problem is that Mr. Clark did not allege that any correctional officer acted with deliberate indifference during his fourteen days in solitary confinement. That is, Mr. Clark did not say—or allow us to infer—that a particular correctional officer knew of and disregarded the constitutional violations." (quotation marks omitted)); *cf. Watson*, 567 F. App'x at 79 ("Watson also failed to demonstrate that a genuine issue of material fact existed regarding the subjective element of this claim. Although Watson submitted seven written requests for a hygiene products package, he did not direct them to the proper entity," even though that entity was known by him.).

Again, should Grimes choose to file an amended complaint challenging his conditions of confinement, he should address these deficiencies.

c.  *ADA Claims*

Third, Grimes cites the Americans with Disabilities Act ("ADA") but does not provide any factual basis for a claim under that statute.  (Doc. No. 1 at 3.)  To state a claim under the ADA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-9 (3d Cir. 2019) (footnote omitted).  The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (footnote omitted).

A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).  Title II of the ADA does not provide for individual liability.  *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

It is unclear why Grimes has invoked this statute.  Nothing in the Complaint suggests that he was discriminated against because of a disability or denied accommodations for a disability

with respect to any programs, services, or activities at the Detention Center or Riverside Correctional Facility. Although Grimes alludes to certain mental health conditions, the specific nature of any alleged disability and how it limits him in a major life activity are unclear for purposes of an ADA claim. To proceed with any claim under the ADA, Grimes must resolve these deficiencies.

### d. Request for Criminal Charges

Last, Grimes seems to want the Court to ensure criminal charges are filed against "Correctional Officer Harris," who was involved in the alleged assault at the Detention Center. (*See* Doc. No. 1 at 1.) That is not relief the Court can grant to him in this case. *See Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties"). In additiona, "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Sanders v. Downs*, No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar.9, 2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer Cnty.,* 260

F. App'x 472, 475 (3d Cir. 2008) (alterations in the original); *Nedab v. Lencer*, No. 06-54, 2007 WL 853595 at *3 (W.D. Pa. Mar. 20, 2007) (plaintiff lacked standing to assert constitutional violation premised on state police officer's alleged failure to investigate and file criminal charges related to assault against plaintiff). Accordingly, Grimes also may not proceed on any claim based on the Police Department's failure to pursue charges against Officer Harris.

### C. Conclusion

For those reasons, Grimes's motion to proceed *in forma pauperis* is granted. Having screened the Complaint pursuant to 28 U.S.C. § 1915, the Court dismisses Grimes's Complaint in its entirety. Grimes's claims against the Detention Center and the Police Department are dismissed with prejudice, and his remaining claims are dismissed without prejudice and with leave to amend.

### III. Miscellaneous Motions

In addition to his motion to proceed *in forma pauperis*, Grimes has also moved to have a nonparty held in contempt (Doc. No. 5) and to have a new judge assigned to his case (Doc. No. 6). The Court addresses each motion in turn.

### A. Motion for Contempt

First, Grimes moves to hold nonparty Ryan Grosso in contempt because Grosso allegedly told Grimes that "he would start an investigation on [Grimes's] behalf" in connection with the May 7, 2023 assault, but Grosso failed to do so. (Doc. No. 5.) Grosso is not named as a Defendant in this case, nor is he alleged to be in violation of any order entered by the Court in this case. Accordingly, the Court denies this motion.

### B.     Motion for New Judge

Next, Grimes filed a motion with the Court requesting that "the judge appropriate to deal with litigants . . . with mental disabilities take up my case instead of the current Judge Karen S Marston."  (Doc. No. 6.)  Grimes does not explain why the undersigned is incapable of resolving his claims or otherwise show that recusal is appropriate in this case.  Accordingly, the Court denies this motion as well.

## IV.    CONCLUSION

As set forth more fully above, Grimes's § 1983 claims against the Detention Center and the Police Department are dismissed with prejudice, and his claims against Commissioner Carney are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Cognizant of Grimes's *pro se* status, the Court grants Grimes an opportunity to "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim."  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  Any amended complaint should clearly describe the factual basis for Grimes's claims and explain how each Defendant was involved in the alleged denial of his Constitutional rights.  Grimes's remaining motions (Doc. Nos. 5, 6) are denied.  An appropriate Order follows.